# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

**LEGENDARY LIGHTNING GROUP, INC.**                    **PLAINTIFF**

**v.**                                        **CAUSE NO. 4:15CV53-LG-CMC**

**OPTIGENEX, INC.**                                        **DEFENDANT**

## MEMORANDUM OPINION AND ORDER
## <u>GRANTING MOTION TO DISMISS</u>

BEFORE THE COURT is the Motion to Dismiss [7] filed by Defendant Optigenex, Inc. The issues have been briefed. After due consideration of the parties' submissions and the relevant law, it is the Court's opinion that the allegations of the Amended Complaint fail to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) or meet the heightened pleading requirements of Fed. R. Civ. P. 9(b). The claims are therefore dismissed without prejudice, and Plaintiff is granted an opportunity to file a motion for leave to file a second amended complaint.

### BACKGROUND

This case concerns the circumstances surrounding Plaintiff Legendary Lightning's monetary investment in Optigenex. Legendary's sole shareholder, Terry LaCore, claims that he was promised certain benefits in exchange for Legendary's investment, which Optigenex has not delivered. Legendary filed an action alleging claims of fraud by non-disclosure, statutory fraud, and a demand for inspection of books and records against Optigenex in the Collin County, Texas, 416th Judicial District Court. Optigenex removed the action to this Court and filed this Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b).

Legendary responded to the Motion by filing an Amended Complaint [11], alleging "fraud and deceit by intentional misrepresentation;" "fraud by negligent misrepresentation;" "fraud and deceit by suppression;" and constructive fraud. Legendary alleges that Optigenex induced LaCore to make a substantial purchase of shares in 2012, with the promise that the shares would soon be publicly traded. (Am. Compl. 1, ECF No. 11). According to Legendary, the shares have never been eligible for public trading, with the result that Legendary's investment is now virtually worthless. (*Id.*). Legendary also alleges it has not been allowed effective representation on Optigenex's board of directors, although it was promised a representative board member.

After filing its Amended Complaint, Legendary filed a Response in Opposition [15] to the Motion to Dismiss. In its Response, Legendary asserts that 1) it has now adequately pled the who, what, why, when and where of its fraud claims, making dismissal pursuant to Fed. R. Civ. P. 9(b) unwarranted, and 2) its claims are essentially for fraudulent inducement. Optigenex has filed a Reply addressing the adequacy of the allegations of the Amended Complaint, as well as Legendary's arguments concerning the same. It therefore appears that the parties have had the opportunity to fully brief the issues before the Court.

DISCUSSION

Optigenex challenges Legendary's fraud claims on three grounds. First, Optigenex argues that Legendary does not allege sufficient factual allegations to plausibly state a claim for fraud under Federal Rule of Civil Procedure 9(b). Second,

Optigenex argues that Legendary cannot state a claim for fraud as a matter of law, because the reliance element of any fraud claim is negated by the "No Reliance" provision of the Securities Purchase Agreement memorializing the parties' transaction. (Mot. to Dismiss Ex. 1 at 20 (¶9.3), ECF No. 7-1). Third, Optigenex contends that Legendary's claims are essentially for breach of contract, and therefore barred by Texas' economic loss doctrine. Specifically, the promises regarding Legendary's board of director member are incorporated into Paragraph 4.3 of the Securities Purchase Agreement, and the share registration procedures and schedule are set out in Paragraph 6. (*Id.* at 10, 12-16).

## 1. The Legal Standard

When considering a motion to dismiss under Rule 12(b)(6), the Court must accept all well-pleaded facts as true and view those facts in the light most favorable to the plaintiff. *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461 (5th Cir. 2010) (quotation marks omitted). However, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Whether this standard has been met is "a context-specific task that requires the reviewing court to draw on its judicial

experience and common sense." *Id.* at 679.

Fraud claims must also satisfy Federal Rule of Civil Procedure 9(b), which requires that a party "state with particularity the circumstances constituting fraud" although "malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). To meet Rule 9(b)'s heightened standard, "a plaintiff must plead the time, place and contents of the false representation, as well as the identity of the person making the misrepresentation and what that person obtained thereby." *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 186 (5th Cir. 2009) (internal quotation marks and alterations omitted). "Given the elements of reliance and damages, pleading common law fraud with particularity demands the specifics of the false representation." *Id.* at 188–89.

## 2. Interpreting the Claims

Legendary alleges that LaCore became acquainted with officers of Optigenex, who sought LaCore's investment in their company to "assist with relieving debt overhang and make it a more attractive investment as a 'rapid growth' company." (Am. Compl. 4 (¶14), ECF No. 11). Negotiations continued from March to July 2012, during which time Mr. Zwiren, on behalf of Optigenex, represented that between 2010 and 2011, Optigenex had increased its revenues by 300 percent and expected to increase its annual revenues from $1.2 million to $5 million in two years. (*Id.* at 5 (¶11a&b)). Zwiren further represented that Optigenex was "'DTC eligible,'" "'there should be no problem whatsoever depositing your shares for free trading after the legend is removed,'" "'[w]e will be Pink Sheet Current shortly after the transaction

closes'" and "'we will be rated OTCQB fully reporting' when the registration becomes effective." (*Id.* (¶11e-g)).

The parties executed a Securities Purchase Agreement dated July 16, 2012. (*Id.* at 5-6 (¶19)). Legendary alleges that to date, it has received no financial information from Optigenex, and there has been neither a shareholder meeting nor an election of officers or directors. (*Id.* at 6 (¶21)).

Legendary has labeled its claims as various types of fraud, but courts are to look to the substance of pleadings rather than the labels given. *See Armstrong v. Capshaw, Goss & Bowers*, 404 F.3d 933, 936 (5th Cir. 2005). After careful review of Legendary's Amended Complaint and Response to the Motion to Dismiss, the Court concludes that, with the exception of the constructive fraud claim, Legendary's fraud claims should be construed as a claim of fraudulent inducement. Although not completely clear from the allegations of the Amended Complaint, Legendary's fraud claims appear to be premised solely on the differences between what was promised prior to its purchase of shares and what occurred after the purchase. Legendary itself argues that its claims are for fraudulent inducement:

> Essentially the facts as set forth in the complaint establish a claim that the highly paid officers of Optigenex fraudulently sought [an] investment from Plaintiff with false promises of the ability to register a security that the officers, Dan Zwiren and Anthony Worth, knew or should have reasonably known would not be allowed to be registered. . . . Only after receiving the investment did Optigenex . . . contend there might be a conflict of interest with Legendary Lightning's selected board representative, thereby, limiting exposure to Legendary Lightning's discovery of the full extent of the fraud perpetrated.

(Pl. Resp. in Opp. 1-2, ECF No. 15).

-5-

The promises alleged to have been made are not contradicted by the Securities Purchase Agreement, but are consistent with it. Optigenex argues that Legendary's claims regarding these promises should be classified as breach of contract, and barred by the economic loss doctrine. "The economic loss rule generally precludes recovery in tort for economic losses resulting from a party's failure to perform under a contract when the harm consists only of the economic loss of a contractual expectancy." *In re Wheeler*, No. 14-10615, 2015 WL 3824777, at *2 (5th Cir. June 22, 2015) (citing *Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014)). Legendary argues that the economic loss doctrine does not bar its claims, because "but for the fraud, Plaintiff would not have entered into the Stock Purchase Agreement with Optigenex." (Pl. Resp. in Opp. 5, ECF No. 15).

Texas law allows recovery of tort damages for a fraudulent inducement claim "irrespective of whether the fraudulent representations are later subsumed in a contract or whether the plaintiff only suffers an economic loss related to the subject matter of the contract." *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998). "[A]n independent legal duty, separate from the existence of the contract itself, precludes the use of fraud to induce a binding agreement." *Id.* Thus, claims that Optigenex has not fulfilled the various promises it made to induce Legendary to enter into the Stock Purchase Agreement are properly classified as claims of fraudulent inducement.

The constructive fraud claim must be considered separately. It is akin to a

breach of fiduciary duty claim, and defined by Texas law as "'the breach of a legal or equitable duty that the law declares fraudulent because it violates a fiduciary relationship.'" *Jacked Up, LLC v. Sara Lee Corp.*, No. 3:11-CV-3296-L, 2015 WL 3513195, at *11 (N.D. Tex. June 4, 2015) (quoting *Hubbard v. Shankle*, 138 S.W.3d 474, 483 (Tex. Ct. App. 2004)).

### 3. Fraudulent Inducement

A. The Applicable Law

To prevail on a fraud claim a plaintiff must prove that (1) the defendant made a material misrepresentation that was false; (2) the defendant knew it was false when made or made it recklessly as a positive assertion without any knowledge of its truth; (3) defendant intended the plaintiff to act upon the representation; and (4) plaintiff actually and justifiably relied on the misrepresentation and suffered injury. *See Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 923 (Tex. 2010). Fraudulent inducement "is a particular species of fraud that arises only in the context of a contract and requires the existence of a contract as part of its proof." *Haase v. Glazner*, 62 S.W.3d 795, 798 (Tex. 2001).

The fraudulent promises Legendary alleges Optigenex made are that 1) the stock Legendary purchased would become publicly tradable; and 2) Legendary would be able to designate a member of the Optigenex board of directors. Both of these promises concern future actions, and as such, they may constitute actionable misrepresentation if Optigenex made them with no intention of performing as represented. *See U.S. Quest Ltd. v. Kimmons*, 228 F.3d 399, 403 (5th Cir. 2000)

(citing *Formosa Plastics*, 960 S.W.2d at 48). "While a party's intent is determined at the time the party made the representation, it may be inferred from the party's subsequent acts after the representation is made." *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434 (Tex. 1986) (citation omitted). But mere failure to perform a contract does not constitute fraud; it is instead a breach of contract. *Kevin M. Ehringer Enters. v. McData Servs. Corp.*, 646 F.3d 321, 325 (5th Cir. 2011); *Formosa Plastics*, 960 S.W.2d at 48. For Legendary to state a fraudulent inducement claim, it must allege facts that allow the Court to draw the reasonable inference that Optigenex is liable for the misconduct alleged - that at the time it made the promises to Legendary, Optigenex had no intention of performing. *See Kevin M. Ehringer Enters.*, 646 F.3d at 325 ("To be actionable as fraudulent inducement, a breach must be coupled with a showing that the promisor never intended to perform under the contract."); *see also Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008) (plaintiff must set forth specific facts supporting an inference of fraud).

B. Analysis

The allegations that might concern Optigenex's intentions include:

1. During initial negotiations between Zwiren, Worth and LaCore, Legendary "believes that Defendant formed the initial scheme to bring in an outsider to invest funds, but provide [very] little authority or access to information." (Am. Compl. 4 (¶15), ECF No. 11).

2. Despite a "clear chill" placed on the stock, "Zwiren continued to promote the registration of the securities." (*Id.* (¶16)).

3. "It was not until after the investment was complete that Optigenex then raised the concern about a conflict of interest and refused to provide financial documents concerning the health of the company or any other information that would permit Legendary Lightning to appropriately monitor its sizable investment. Another step in the scheme to cut Plaintiff out of any ability to direct the security of its investment or even know how it is performing." (*Id.* at 6 (¶20)).

4. "It is believed" that Optigenex continues to pay its officers large salaries, thereby depleting company assets, including Legendary's investment. (*Id.* (¶22)).

5. "It is believed that Defendant was at the time of the transaction aware or should have been aware of the impending freeze to be placed on the registration of additional shares to be traded by the Depository Trust Company." (*Id.* at 7 (¶25)).

*Tradability of the stock*

Most of Legendary's allegations against Optigenex are assertions made as a matter of belief. "Conclusory allegations made upon information and belief are not entitled to a presumption of truth, and allegations stated upon information and belief that do not contain any factual support fail to meet the *Twombly* standard." *In re Superior Air Parts, Inc.*, 486 B.R. 728, 740 (Bankr. N.D. Tex. 2012) (citations omitted); *see also Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008). Legendary's complaint must contain "enough fact to raise a reasonable expectation that discovery will reveal evidence of [fraud]." *Twombly*, 550 U.S. at 556.

There are no facts pled in support of Legendary's assertion that it believes Optigenex knew it would not perform under the contract when it promised that its

stock would be tradable after it received Legendary's funds.  The Court is left with a simple allegation that Optigenex possessed fraudulent intent, and nothing else. Similarly, although Legendary asserts its belief that Zwiren was aware of a "chill" placed on Optigenex's stock at the time of negotiations, there are no facts alleged from which the Court could infer that Zwiren was aware of a chill, or that Zwiren's knowledge of the existence of a chill shows that Optigenex did not have the intention to fulfill its contractual promise at the time it was made.  Because there is no explanation of why Zwiren's statements were fraudulent, Legendary has failed to sufficiently meet Rule 9(b)'s requirements and plausibly plead fraudulent intent. *See Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

### Board of Directors

The single assertion concerning Optigenex's intent regarding Legendary's board of director member is conclusory and without supporting facts.  Legendary simply asserts that Optigenex had a scheme to cut Legendary out of financial management.  Legendary later alleges that it did have a member on the board "for a period of time," but it was unable to obtain the information it sought through that director.  (Am. Compl. at 7 (¶24)).  This fact does not support Legendary's assertion that Optigenex did not intend to fulfill its promise concerning Legendary's director at the time it was made.  Further, there are no allegations setting out the "who, what, when, where and how" of Optigenex's pre-Agreement promise of a board of directors representative.  Accordingly, Legendary has failed to sufficiently meet Rule 9(b)'s requirements and plausibly plead fraudulent intent.

### 4. Constructive Fraud

Constructive fraud "presupposes a fiduciary duty." *Jacked Up, LLC,* 2015 WL 3513195, at *11. A fiduciary duty in turn requires a fiduciary relationship. *See AmeriPath, Inc. v. Hebert*, 447 S.W.3d 319, 340 (Tex. Ct. App. 2014). A fiduciary relationship may be based on certain formal relationships, such as an agency relationship, that create a fiduciary duty as a matter of law. *Meyer v. Cathey*, 167 S.W.3d 327, 331 (Tex. 2005). Alternatively, a fiduciary relationship may be based on "an informal fiduciary duty that arises from a moral, social, domestic or purely personal relationship of trust and confidence." *Id.* (internal quotation marks omitted). "In order to give full force to contracts," courts applying Texas law "do not create such a relationship lightly." *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 177 (Tex. 1997). "[A] party to a contract is free to pursue its own interests, even if it results in a breach of that contract, without incurring tort liability*." Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591, 594 (Tex. 1992). "To impose an informal fiduciary duty in a business transaction, the special relationship of trust and confidence must exist prior to, and apart from, the agreement made the basis of the suit." *Meyer*, 167 S.W.3d at 331 (*quoting Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 287 (Tex.1998)). "[M]ere subjective trust does not, as a matter of law, transform arm's-length dealing into a fiduciary relationship." *Schlumberger Tech. Corp.*, 959 S.W.2d at 177.

Legendary's allegations include no facts showing a fiduciary relationship between itself and Optigenex. Although it alleges in a conclusory manner that

"Defendant was in a special and confidential relationship with Plaintiff," (Am. Compl. at 10 (¶52), ECF No. 11), there are no facts making it plausible that such a relationship existed. To the contrary, Legendary alleges that,

> [t]he relationship between the parties centered around the negotiation of a license agreement between Defendant and a third-party, BHIP Global, Inc. Mr. LaCore is the largest shareholder of BHIP Global, Inc. . . . . Through this relationship over the next several months, Mr. LaCore, Mr. Zwiren and Mr. Worth became familiar with each other.

(*Id.* at 3-4 (¶¶11-13)). After this period of becoming familiar with Optigenex's officers, LaCore was apparently receptive to their overtures concerning an investment in Optigenex. (*Id.* at 4 (¶14)). The facts pled show nothing more than arm's-length business transactions between the parties, not a special relationship of trust and confidence. Because Legendary's allegations do not show a plausible fiduciary relationship, Legendary fails to state a claim of constructive fraud.

## CONCLUSION

After reviewing the allegations of the Amended Complaint, the Court finds that they are insufficient to state claims under Rule 12(b)(6) and the heightened pleading requirements of Fed. R. Civ. P. 9(b). Although the Court will grant Optigenex's Motion to Dismiss, and although Legendary has amended its complaint once, Legendary should be given one last opportunity to plead facts in support of its fraud allegations. "[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *Great Plains Trust Co. v. Morgan*

*Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). The Court has interpreted the claims of the Amended Complaint and explained why they fail to state a claim under the applicable legal standards. Legendary states that it is willing to attempt to cure any defects identified by the Court. Therefore, Legendary will be granted an opportunity to seek leave to file a second amended complaint.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the Motion to Dismiss [7] filed by Defendant Optigenex, Inc. is **GRANTED**. Plaintiff's claims against the Defendant are **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED AND ADJUDGED** that Plaintiff is granted leave to file a motion for leave to file an amended complaint against the Defendant, attaching the proposed second amended complaint, no later than twenty (20) days from the date of this Order.

**SO ORDERED AND ADJUDGED** this the 26th day of June, 2015.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
CHIEF U.S. DISTRICT JUDGE